2024 IL App (1st) 220455

No. 1-22-0455

Opinion filed March 27, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 11210 |
| | ) | |
| ASHONTIS HATCHER, | ) | Honorable |
| | ) | John T. Gallagher, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, defendant Ashontis Hatcher was found guilty of four counts of

aggravated unlawful use of a weapon (AUUW) and sentenced to one year in prison. On appeal,

defendant contends that (1) the trial court should have granted his motion to quash his arrest and

suppress evidence, (2) his waiver of his right to a jury trial was invalid, (3) the subsections of the

AUUW statute under which he was convicted violate the second amendment to the United States

Constitution, and (4) if we affirm his AUUW convictions, we should vacate all but one pursuant

to the one-act, one-crime rule. For the following reasons, we affirm the denial of defendant's

motion to quash his arrest and suppress evidence, the trial court's acceptance of his jury waiver, and the facial constitutionality of the subsections of the AUUW statute under which he was convicted. However, we agree that all but one of defendant's convictions should be vacated pursuant to the one-act, one-crime rule, and we remand to the trial court to determine which conviction should stand and which should be vacated.

¶ 2                                    I. BACKGROUND

¶ 3     The State charged defendant with and proceeded to trial on four counts of AUUW arising out of his possession of a firearm on July 12, 2019. Count I alleged that defendant knowingly carried an uncased, loaded, and immediately accessible firearm without a concealed carry license (CCL) or Firearm Owner's Identification (FOID) card (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2018)). Count II alleged that defendant knowingly carried an uncased, loaded, and immediately accessible firearm without a CCL (*id.* § 24-1.6(a)(1), (a)(3)(A-5)). Count III alleged that defendant knowingly carried a firearm without a FOID card (*id.* § 24-1.6(a)(1), (a)(3)(C)). Count IV alleged that defendant knowingly carried a firearm when he was under 21 years of age (*id.* § 24-1.6(a)(1), (a)(3)(I)).

¶ 4                                  A. Motion to Suppress

¶ 5     Defendant filed a pretrial motion to quash his arrest and suppress certain evidence. His motion alleged that he was arrested by Orland Park police at approximately 7:50 p.m. on July 12, 2019. Defendant was a passenger in a vehicle when he was arrested. Police recovered a firearm and "other identifying items" from a bag near defendant's seat in the rear passenger compartment. Defendant's motion argued that the arresting officers did not have an arrest warrant for him, a search warrant for his property, or probable cause to justify his warrantless arrest.

¶ 6    At the hearing on defendant's motion to suppress, Orland Park Police Officer David Staszak testified that he and his partner, Officer Chris Losurdo, were on duty in plain clothes and driving an unmarked police vehicle on the evening of July 12, 2019.[1] Tinley Park Police Officer Russ Borrowdale informed Staszak that he saw a Nissan stop at a bank in Tinley Park. Borrowdale saw the front passenger, who was later identified as Andre Culpepper, exit the Nissan, look at an automatic teller machine (ATM), and return to the vehicle, which drove off. Borrowdale followed the Nissan to another bank in Orland Park, and Staszak and Losurdo arrived on scene. The officers monitored the bank's entrance and exit. Borrowdale told Staszak that he saw Culpepper enter the bank's vestibule, use the ATM, and return to the Nissan. Staszak suspected that Culpepper was "card tracking," which is using someone else's debit card to make deposits into a bank account and then withdrawing the funds before the bank discovers that the transactions are fraudulent. Staszak had investigated card tracking previously at that particular Orland Park bank.

¶ 7    After the Nissan left the second bank, Staszak saw it change lanes without using a turn signal, so he conducted a traffic stop. Staszak, Losurdo, and Borrowdale approached the Nissan. Kendrick Morse was driving the Nissan, Culpepper was in the front passenger seat, and defendant, whom Staszak identified in court, was in the rear passenger seat.[2] Culpepper initially refused multiple orders to exit the vehicle, but when he did get out, the officers arrested him and recovered an ATM receipt from his hand. The receipt matched a credit or debit card belonging to someone named Tyler Hickman, who was not in the vehicle, and it indicated that Culpepper had used

---

[1]The record uses both "officer" and "detective" as titles for the Orland Park Police personnel. For simplicity, we will refer to both as officers.

[2]The record spells the driver's last name as both "Morse" and "Morris." We will use "Morse" because that is how Staszak spelled it at the motion to suppress hearing.

Hickman's card in the ATM transaction at the bank in Orland Park. The officers recovered Hickman's card from the front passenger door handle.

¶ 8    The officers ordered Morse and defendant to exit the Nissan, which they did. Defendant was not handcuffed, but he was not free to leave. The officers searched the vehicle "for further evidence of possible bank fraud crimes." They recovered a debit card belonging to a Kenesha Allen from the center console and a check for $2007 from the glove box. Orland Park Police Officer Casey Wall, who arrived during the traffic stop, saw an open backpack on the floorboard of the rear passenger area where defendant's feet had been. He could see a handgun magazine protruding from the backpack's open zipper. From the backpack, the officers recovered a handgun, a debit or credit card belonging to defendant, and several credit cards belonging to people who were not in the Nissan.

¶ 9    Defendant argued that there was no indication he was involved in criminal activity when police detained him and searched his backpack. He was not the person police saw approach ATMs at the two banks, and he complied with the officers' orders, defendant maintained. The State argued that the officers had reasonable suspicion to stop the Nissan and probable cause to search it and arrest its occupants based on suspicion of bank fraud, which was corroborated by the officers' discovery of bank cards and a check in the vehicle.

¶ 10    The trial court denied defendant's motion to suppress. The court concluded that the officers were "conducting a reasonable investigation into a suspicion" of bank fraud, which they substantiated when they found Hickman's card near the vehicle's front passenger door handle. In addition, the court found that the officers saw the firearm's magazine "within open sight" because the backpack was open.

¶ 11                                                    B. Trial

¶ 12    Prior to trial, defendant signed a jury waiver form, which stated "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing." In response to questioning by the trial court, defendant confirmed that he signed the jury waiver form and that he was "asking for a bench trial, not a jury trial."

¶ 13    At trial, Losurdo testified consistently with Staszak's testimony at the motion to suppress hearing. Losurdo added that Borrowdale initially contacted him and Staszak by phone.

¶ 14    Wall testified that he was on duty in plain clothes on July 12, 2019. Wall learned that Staszak and Losurdo had conducted a traffic stop on the 15400 block of LaGrange Road and drove to that location. Wall spoke with defendant, whom he identified in court, while defendant was in the rear passenger seat of the Nissan. After defendant complied with orders to exit the Nissan, Wall searched the rear passenger compartment and found a small red backpack on the floorboard. He saw the magazine of a firearm protruding from an open zipper. Wall searched the backpack and recovered a loaded firearm and several debit and credit cards, one of which had defendant's name on it. The other cards belonged to individuals who were not in the Nissan.

¶ 15    Wall identified photographs of the firearm, the backpack, and defendant's debit card, which the State moved into evidence. The first photograph depicts a Smith & Wesson handgun. The second photograph depicts a red backpack surrounded by a collection of personal items, including four bank receipts and four credit or debit cards. The third photograph depicts the back of a bank card belonging to defendant.

¶ 16    The parties stipulated that defendant was born on August 26, 1998, and that he did not possess a valid FOID card or CCL on July 12, 2019.

¶ 17 The trial court found defendant guilty on all counts. The court explained that defendant's debit card being inside the backpack supported his constructive possession of the backpack and the firearm inside it.

¶ 18 Defendant filed a motion for a new trial, which argued, *inter alia*, that the trial court erred in denying his motion to suppress. Defendant's posttrial motion did not address his waiver of his right to a jury trial, the constitutionality of the AUUW charges, or the one-act, one-crime rule.

¶ 19 The trial court sentenced defendant to one year in prison.

¶ 20 Defendant timely appealed.

¶ 21                                II. ANALYSIS

¶ 22 On appeal, defendant argues that (1) the trial court should have granted his motion to suppress, (2) his waiver of his right to a jury trial was invalid, (3) the subsections of the AUUW statute under which he was convicted violate the second amendment to the United States Constitution, and (4) if we affirm his convictions, all but one should be vacated pursuant to the one-act, one-crime rule.

¶ 23 According to the Illinois Department of Corrections (IDOC) website, defendant has completed his sentence and is no longer in IDOC custody.[3] Nevertheless, he can still challenge his convictions. "[T]he completion of a defendant's sentence renders a challenge to the sentence moot, but not a challenge to the conviction. [Citation.] Nullification of a conviction may hold important consequences for a defendant." *In re Christopher K.*, 217 Ill. 2d 348, 359 (2005).

---

[3]We take judicial notice of information on IDOC's website. *People v. Castillo*, 2022 IL 127894, ¶ 40.

¶ 24                              A. Motion to Suppress

¶ 25    Defendant first contends that the trial court should have granted his motion to suppress the firearm police recovered from his backpack, along with information about his age and lack of a FOID card and CCL.

¶ 26    At a motion to suppress hearing, the defendant has the burden to make a *prima facie* showing that the evidence in question was obtained by an illegal search or seizure. *People v. Brooks*, 2017 IL 121413, ¶ 22. A *prima facie* showing means the defendant must establish the factual and legal basis for the motion to suppress. *Id.* When the defendant alleges evidence was the product of an unlawful search or seizure, he must establish that there was a search or seizure and that it was unlawful. *Id.*; *People v. Juarbe*, 318 Ill. App. 3d 1040, 1049 (2001). If a defendant makes a *prima facie* showing, the burden shifts to the State to present evidence to counter it. *Brooks*, 2017 IL 121413, ¶ 22. The ultimate burden of proof remains with the defendant. *Id.*

¶ 27    We review the denial of a motion to suppress using a two-part standard. *Id.* ¶ 21. We give deference to the trial court's findings of fact, which we reverse only if they are against the manifest weight of the evidence. *Id.* We review *de novo* whether the police had probable cause to conduct searches or seizures. *Id.* In reviewing the trial court's ruling on a motion to suppress, we consider the evidence adduced at trial as well as at the suppression hearing. *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 41.

¶ 28    The fourth amendment to the United States Constitution prohibits unreasonable searches and seizures. *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 31 (citing U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001)). This case involves three interactions to which the fourth amendment applies: the initial traffic stop of the Nissan,

defendant's arrest, and the search that produced the firearm in defendant's backpack. Defendant's motion to suppress did not challenge the legality of the initial traffic stop, and he does not raise that issue on appeal. Therefore, we assume that the traffic stop was lawful and proceed to the issue of defendant's arrest.

¶ 29 Defendant argues that "police arrested [him] after searching the car where he had been a passenger and finding a gun in a backpack that was on a rear passenger floorboard." According to defendant, his arrest was unjustified because "[p]olice did not observe [him] engage in any unlawful activity before the arrest or determine whether his possession of a firearm was illegal." Defendant also contends that his "illegal arrest led to the seizure of a gun and information about his age and lack of a FOID card or concealed-carry license."

¶ 30 We find these arguments somewhat contradictory. On the one hand, defendant claims that police found the firearm in his backpack first, then arrested him. On the other hand, defendant claims that police first arrested him unlawfully, then "seiz[ed]" the firearm. Perhaps defendant is drawing a fine distinction between "finding" the firearm and "seizing" it, but it is not clear what he contends the order of events was. For its part, the State argues that defendant forfeited the first argument, *i.e.*, that the officers did not have probable cause to arrest him because they learned only after his arrest that it was illegal for him to possess the firearm due to his age and his lack of a FOID card and CCL. According to the State, defendant did not advance that theory of suppression in the trial court. Ultimately, we do not need to untangle these arguments because our review of whether the officers violated defendant's fourth amendment rights is *de novo*. See *Brooks*, 2017 IL 121413, ¶ 21. We will apply fourth amendment principles to the evidence that was presented at the motion to suppress hearing and at trial.

¶ 31    As noted above, there is no dispute that police conducted a traffic stop of the Nissan in which defendant was a passenger. Defendant does not claim that the traffic stop was unlawful. Following a lawful traffic stop, police may order the driver and passengers out of the vehicle while the officers complete the investigatory stop. *People v. Gonzalez*, 184 Ill. 2d 402, 413-14 (1998). Ordering defendant to exit the Nissan was lawful. See *id.*

¶ 32    Clearly defendant was arrested at some point after police stopped the Nissan. The question is when that occurred. " 'An arrest occurs when the circumstances are such that a reasonable person, innocent of any crime, would conclude that he was not free to leave.' " *People v. Mrdjenovich*, 2023 IL App (1st) 191699, ¶ 63 (quoting *People v. Lopez*, 229 Ill. 2d 322, 346 (2008)). In determining whether an arrest occurred, we must consider " 'all of the circumstances surrounding the encounter.' " *Id.* (quoting *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (*per curiam*)).

¶ 33    The evidence established the following sequence of events: Police stopped the Nissan and ordered Culpepper to exit the vehicle; he refused. When Culpepper eventually did exit the Nissan, the officers arrested him and recovered an ATM receipt that matched a bank card belonging to a Tyler Hickman, who was not in the vehicle. The officers found Hickman's card in the front passenger-side door. Shortly thereafter, the officers ordered defendant and Morse out of the vehicle, searched it, and found another bank card belonging to a Kenesha Allen, who was not in the vehicle, as well as a check for $2007. When defendant was outside the Nissan, he was not handcuffed, and the officers did not have their weapons drawn. However, Staszak testified that defendant was "not free to leave" at that point. Wall saw the magazine of a firearm protruding from defendant's open backpack and recovered the firearm along with several credit and debit cards. Staszak confirmed that defendant was detained when Wall recovered these items from

defendant's backpack. A reasonable person in defendant's position would not have thought that he was free to simply walk away from the Nissan while the officers searched it, particularly because Culpepper had already been arrested. See *id.* Therefore, defendant's arrest occurred shortly after he exited the Nissan and before Wall searched his backpack and recovered the firearm.

¶ 34 Next, we must determine whether defendant's arrest was lawful. A warrantless arrest is reasonable only if it is supported by probable cause. *People v. Grant*, 2013 IL 112734, ¶ 11. Probable cause to arrest exists if the facts known to the officer at the time of the arrest are sufficient to lead a reasonable person to believe that the arrestee has committed a crime. *Id.* When determining whether officers had probable cause to arrest, we examine the totality of the circumstances known to the officers at the time of the arrest. *Id.* "Whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt." *Id.*

¶ 35 When the officers arrested defendant, they had observed Culpepper's suspicious behavior at two nearby banks, both of which he traveled to in the Nissan. The officers had also recovered two pieces of evidence of bank fraud from the Nissan: the ATM receipt and Hickman's bank card. Given that defendant, Culpepper, and Morse were all in the Nissan together, " 'it was reasonable for the officer[s] to infer a common enterprise among the three men.' " See *People v. Ortiz*, 355 Ill. App. 3d 1056, 1069 (2005) (quoting *Maryland v. Pringle*, 540 U.S. 366, 373 (2003)); see also *People v. Allen*, 268 Ill. App. 3d 279, 284 (1994) (it is "likely a car passenger is a companion to the driver, and perhaps involved in the driver's criminal behavior"). In sum, at the time of defendant's arrest, police knew that defendant was a passenger in a vehicle they had probable

cause to believe was being used to commit bank fraud. That was sufficient to provide probable cause for defendant's arrest. See *Ortiz*, 355 Ill. App. 3d at 1073.

¶ 36 Defendant argues that "mere possession of a handgun was not a crime and could not serve as a basis for arrest." That may be true, but the evidence established that defendant was arrested *before* Officer Wall discovered the firearm in his backpack. Defendant was not arrested based on his possession of a firearm; he was arrested based on his suspected involvement in bank fraud.

¶ 37 Defendant also contends that the officers saw only Culpepper "engaging in the suspicious activity at the two ATMs." That is also true, but, as explained above, police may, in some circumstances, infer a common criminal enterprise among occupants of the same vehicle. See *id.* at 1069. It is unlikely that an innocent, uninvolved person would be invited to ride along with Culpepper as he committed suspected bank fraud. See *id.*

¶ 38 Defendant argues that the trial court should have suppressed evidence that he was under 21 and lacked a FOID card and CCL because those pieces of information were the "fruits of an illegal arrest." But defendant's arrest was lawful, so this evidence was not the product of an unlawful arrest. Moreover, at the motion to suppress hearing, defendant elicited no evidence about when or how the officers learned that defendant did not have a FOID card or a CCL or that he was under 21. There is no factual basis to support suppressing that information. Accordingly, we affirm the denial of defendant's motion to suppress.

¶ 39 B. Jury Waiver

¶ 40 Defendant next argues that the trial court violated his right to a jury trial by accepting his jury waiver without admonishing him of that right and without ensuring that he waived that right knowingly and understandingly.

¶ 41 Defendant's posttrial motion did not raise his waiver of his right to a jury trial. Generally, to preserve an issue for appeal, a defendant must object at trial and raise the issue in a posttrial motion. *People v. Galarza*, 2023 IL 127678, ¶ 45. Failure to do so results in forfeiture of that issue. *Id.* Defendant acknowledges that he did not preserve this issue, but he requests, and we will grant, plain error review. See *People v. West*, 2017 IL App (1st) 143632, ¶ 11 (granting plain error review of validity of jury waiver). The plain error doctrine allows a reviewing court to consider unpreserved claims of error where (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48; see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The violation of a defendant's right to choose a bench or a jury trial constitutes second-prong plain error. *People v. Jordan*, 2019 IL App (1st) 161848, ¶ 18 (citing *People v. Bracey*, 213 Ill. 2d 265, 270 (2004)). The first step of plain error review is determining whether an error occurred at all. *West*, 2017 IL App (1st) 143632, ¶ 11.

¶ 42 Our federal and state constitutions guarantee the right to a jury trial. *Bracey*, 213 Ill. 2d at 269. However, a defendant may waive his right to a jury trial. *Id.*; 725 ILCS 5/115-1 (West 2018). For a jury waiver to be valid, it must be knowingly and understandingly made. *Bracey*, 213 Ill. 2d at 269; 725 ILCS 5/103-6 (West 2018). A written jury waiver is one means by which a defendant may waive his right to a jury, but a written waiver is not automatically valid. *Bracey*, 213 Ill. 2d at 269-70. A jury waiver is generally valid when defense counsel waives that right in open court and the defendant does not object. *Id.* at 270. A court does not need to give any specific

admonishments for a waiver to be effective; rather, whether a jury waiver is valid depends upon the facts and circumstances of each case. *Id.* at 269-70. There is no precise formula for determining whether a jury waiver is valid. *Id.* at 269. "In essence, for a jury waiver to be effective, the trial court must ensure that the defendant knows that the facts of his case would be determined by a judge and not a jury and the resulting consequences of that decision." *West*, 2017 IL App (1st) 143632, ¶ 10 (citing *People v. Bannister*, 232 Ill. 2d 52, 69 (2008)). Defendant has the burden of establishing that his jury waiver was invalid, and we review this issue *de novo*. *Id.*

¶ 43    We find no error based on the record before us. There is no dispute that defendant signed a jury waiver form, which stated, "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing." The court addressed defendant, "I'm holding up a jury waiver form that says you're waiving your right to a jury trial. Did you sign that form, sir?" Defendant responded, "Yes. Yes, sir." The court then asked, "You are asking for a bench trial, not a jury trial, sir; is that correct?" Defendant responded, "Correct." The record suggests no hesitation, uncertainty, or confusion on defendant's part. There is no basis in the record for us to find that defendant's jury waiver was invalid.

¶ 44    Defendant argues that the trial court did not explain the difference between a bench trial and a jury trial, did not ask whether defendant understood that he had the right to a jury trial, and did not ask whether his jury waiver was the product of any threats or promises. The law does not require these admonishments or questions. See *Bracey*, 213 Ill. 2d at 270 ("For a waiver to be effective, the court need not impart to defendant any set admonition or advice."). Defendant cites no authority holding that the absence of these admonishments means his jury waiver was invalid.

¶ 45 Defendant cites *People v. Rambo*, 123 Ill. App. 2d 299, 303 (1970), for the proposition that "signing a [pre]printed [jury waiver] form has become such a routine formality that a perfunctory signing—without proof that the form was read by the defendant and understood by him—cannot be accepted as a substitute for an express waiver, understandingly made after careful interrogation by the court." *Rambo* suggests that the existence of a signed jury waiver form in the court file, on its own, does not automatically constitute a valid waiver. That may be true, but it does not apply to this case. In this case, the court held up defendant's signed jury waiver form when he was in court with his attorney, explained what the form meant, confirmed that defendant signed it, and confirmed that defendant wanted a bench trial and not a jury trial. By contrast, in *Rambo*, the trial court did not ask the defendant if he wished to waive his right to a jury trial, did not read the waiver form to him, did not ask whether he had read the waiver form, and did not ascertain whether the defendant understood the waiver form. *Id.* at 302. *Rambo* is distinguishable and does not compel reversal.

¶ 46 Defendant also contends that he did not understand his right to a jury trial because he had never gone to trial in a criminal case before. That may be true as well, but it does not mean that defendant was a "stranger to the criminal justice system." See *Bannister*, 232 Ill. 2d at 71. In fact, on April 9, 2020, while this case was pending and defendant was out on bond, he was arrested and charged with possession of a firearm while riding as a passenger in a vehicle. And prior to this case, in 2018, defendant was convicted of possession of a controlled substance in Iowa. The record does not support an inference that defendant was so unfamiliar with the criminal justice system that he did not understand the difference between a jury trial and a bench trial. Accordingly, we

find that defendant has not established any error, much less plain error, with respect to his jury waiver.

¶ 47                     C. Constitutionality of the AUUW Statute

¶ 48    Defendant next contends that the subsections of the AUUW statute under which he was convicted are facially unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022). Defendant did not raise the constitutionality of the AUUW statute in his posttrial motion. However, a challenge to the constitutionality of a statute may be raised at any time, even if the defendant did not file a posttrial motion. *People v. McCarty*, 223 Ill. 2d 109, 122-23 (2006).

¶ 49    We presume statutes to be constitutional. *People v. Legoo*, 2020 IL 124965, ¶ 29. "To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). We must construe the statute in a manner that upholds its validity and constitutionality if we reasonably can. *People v. Graves*, 207 Ill. 2d 478, 482 (2003). Defendant makes a facial challenge to the constitutionality of the AUUW statute, which requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, there are no circumstances in which the statute could be validly applied. See *People v. Rizzo*, 2016 IL 118599, ¶ 24; *People v. Davis*, 2014 IL 115595, ¶ 25. We review the constitutionality of any statute *de novo*. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006).

¶ 50    In Illinois, possession of firearms is governed by both civil and criminal statutes. The Firearm Owners Identification Card Act (FOID Card Act) provides that "[n]o person may acquire or possess any firearm *** without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under

the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2018). The State Police may deny an application for a FOID card if the applicant is under 21 and does not have the written consent of his or her parent or guardian. *Id.* § 8(b). The Firearm Concealed Carry Act requires an individual to "possess a [CCL] at all times the licensee carries a concealed firearm" in public. 430 ILCS 66/10(g) (West 2018). To obtain a CCL, an applicant must be 21 or older. *Id.* § 25(1).

¶ 51    Relevant here, the AUUW statute provides that:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; [and]

***

(3) One of the following factors is present:

***

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediate accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act; or

* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card; or

* * *

(I) the person possessing the weapon was under 21 years of age and in possession of a handgun, unless the person under 21 is engaged in lawful activities under the Wildlife Code ***."[4] 720 ILCS 5/24-1.6(a) (West 2018).

Defendant contends that these subsections of the AUUW statute are facially unconstitutional under *Bruen*.

¶ 52    In *Bruen*, the United States Supreme Court announced the following test for the constitutionality of firearms regulations:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command' " *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 49 n.10 (1961)).

As the Third District recently explained,

---

[4]Count I of the indictment cited subsection (a)(3)(A) in addition to subsections (a)(3)(A-5) and (C). We omit subsection (a)(3)(A) because, as best we can tell, it does not apply to defendant. The evidence established that he possessed a pistol or handgun, but subsection (a)(3)(A) applies to firearms "other than a pistol, revolver, or handgun." 725 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2018).

"[t]his text-and-history standard is a two-part inquiry. The first inquiry is: Does the plain text of the second amendment cover an individual's conduct? [Citation.] If not, the regulation is constitutional because it falls outside the scope of protection. But if it does, the individual's conduct is presumptively protected by the second amendment, and we move to the second inquiry: Is the State's regulation 'consistent with the Nation's historical tradition of firearm regulation[?]' [Citation.]" *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶ 13.

¶ 53    First, we must identify the conduct at issue to determine whether that conduct falls under the "plain text" of the second amendment. Defendant challenges three subsections of the AUUW statute, which prohibit possessing a firearm in public (1) without a CCL if the firearm is uncased, loaded, and immediately accessible; (2) without a FOID card; and (3) while under age 21. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C); (a)(1), (a)(3)(I) (West 2018). Defendant argues that merely "carrying a handgun in public" is the conduct at issue. We disagree. Possessing a firearm is only the first part of the AUUW statute, subsection (a)(1). Possessing a firearm in public becomes the crime of AUUW when one of the factors listed in subsection (a)(3) is present. Certainly, defendant would not argue that the State could convict him of AUUW simply by proving that he carried a firearm in public. Accordingly, we find that the conduct at issue is carrying a firearm outside in public without a CCL if the firearm is uncased, loaded, and immediately accessible, or without a FOID card, or while being under 21.

¶ 54    Next, we must determine whether these three forms of conduct are protected by the "plain text" of the second amendment. See *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30. The plain text of the second amendment provides that "[a] well regulated Militia, being necessary to the security

of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. However, according to the Supreme Court, "[t]he Second Amendment *** 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2131 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). The difference between these two quotes is significant. The plain text of the second amendment connects the right to bear arms with the necessity of a "well regulated Militia." U.S. Const., amend. II. By contrast, the Supreme Court's interpretation does not mention militias and, in fact, claims that the right to bear arms "does not depend on service in the militia." *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2127 (citing *Heller*, 554 U.S. at 592). Furthermore, *Bruen* limits the second amendment's scope to (1) citizens who are (2) law-abiding and (3) responsible, and (4) who use firearms for self-defense. *Id.* at ___, 142 S. Ct. at 2156 (American government has not "required law-abiding, responsible citizens to demonstrate a special need for self-protection distinguishable from that of the general community in order to carry arms in public" (internal quotation marks omitted)). The plain text of the second amendment contains none of these terms.

¶ 55    We must decide whether to evaluate Illinois's AUUW statute based on the actual plain text of the second amendment or the Supreme Court's interpretation of the second amendment. The Illinois Supreme Court has suggested that the United States Supreme Court's interpretation controls: "Firearms that have been defaced so that they are untraceable by law enforcement *** are not covered by the plain text of the second amendment because they are not typically used by *law-abiding citizens* for lawful purposes." (Emphasis added.) *People v. Ramirez*, 2023 IL 128123, ¶ 27 (citing *Heller*, 554 U.S. at 625). This court has reached a similar conclusion. In *People v.*

*Baker*, 2023 IL App (1st) 220328, this court explained that "[t]he *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens.' " *Id.* ¶ 37 (citing *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2156). *Baker* noted that *Bruen* repeats the phrase "law-abiding" 18 times between Justice Thomas's majority opinion and the concurrences. *Id.* Indeed, *Bruen*'s concluding paragraph states that New York's firearms regulatory scheme "violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." (Emphasis added.) *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2156. In *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 27, this court maintained *Baker*'s conclusion that the *Bruen* test applies only to "laws that attempt[ ] to regulate the gun possession of law-abiding citizens." (Internal quotation marks omitted.) The district court for the Northern District of Illinois has also "held, post-*Bruen*, that the plain text of the Second Amendment does not cover the possession of firearms by individuals who are not law-abiding."[5] *United States v. Price*, 656 F. Supp. 3d 772, 776 (N.D. Ill. 2023); see *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) (unlawful users of controlled substances fall outside the second amendment's protection as they are not law-abiding).

¶ 56    One panel of this court has suggested that "possession of a firearm is 'presumptively constitutional' " regardless of whether one is "law-abiding." See *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89 (citing *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2126). Similarly, Justice Alito's concurrence claims that *Bruen* "decides nothing about who may lawfully possess a firearm."

---

[5]The decisions of federal district courts are not binding on us, but we may consider them as persuasive authority. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2012 IL App (1st) 112321, ¶ 37 n.3.

*Bruen*, 597 at U.S. at \_\_\_, 142 S. Ct. at 2157 (Alito, J., concurring). But we cannot square these claims with the fact that *Bruen* expressly and repeatedly limits the second amendment's scope to law-abiding citizens. Indeed, the first paragraph of the opinion states that "the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and "a similar right to carry handguns publicly for their self-defense." *Id.* at \_\_\_, 142 S. Ct. at 2122 (majority opinion).

¶ 57 Subsections (a)(3)(A-5) and (a)(3)(C) of the AUUW statute apply exclusively to non-law-abiding conduct. Possessing a concealed firearm outside the home without a CCL violates section 10(g)(1) of the Firearm Concealed Carry Act. 430 ILCS 66/10(g)(1) (West 2018). Possessing a firearm without a FOID card violates section 2(a)(1) of the FOID Card Act. 430 ILCS 65/2(a)(1) (West 2018). Violating the Firearm Concealed Carry Act or the FOID Card Act is not "law-abiding" conduct so, according to *Bruen*, the second amendment does not apply to that conduct. See *Baker*, 2023 IL App (1st) 220328, ¶ 37 ("*Bruen* just does not apply" to those who are not law-abiding). Enforcing subsections of the AUUW statute that simply criminalize what are *already* violations of civil laws does not implicate the second amendment. Our analysis of the constitutionality of subsections (a)(3)(A-5) and (a)(3)(C) ends at the first step of the *Bruen* test.

¶ 58 Subsection (a)(3)(I) prohibits a person who is under 21 from being "in possession of a handgun, unless the person under 21 is engaged in lawful activities under the Wildlife Code." 720 ILCS 5/24-1.6(a)(3)(I) (West 2018). Our supreme court has held that "the public carrying of firearms by those persons under 21 years of age is conduct that falls outside the scope of the second amendment" (*In re Jordan G.*, 2015 IL 116834, ¶ 25), so "neither subsection (a)(3)(C)[ ] nor (a)(3)(I) violates the second amendment rights of *** 18-to-20-year-old persons." *People v.*

*Mosley*, 2015 IL 115872, ¶ 38. Although *Jordan G.* and *Mosley* predate *Bruen*, their reasoning is consistent with the "plain text" and historical analysis that *Bruen* requires. *Jordan G.* and *Mosley* also did not conduct the "means-end" analysis that *Bruen* prohibits. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2127. We do not see how *Bruen* changes the holdings of *Jordan G.* or *Mosley*. Defendant insists that "*Mosley*'s historical analysis is incorrect," but he does not explain how. Regardless, this court lacks authority to overrule the decisions of the Illinois Supreme Court. *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Our supreme court has already concluded that subsection (a)(3)(I) of the AUUW statute is not unconstitutional because it does not implicate the second amendment. *Jordan G.*, 2015 IL 116834, ¶ 25; *Mosley*, 2015 IL 115872, ¶¶ 36-38. We follow those holdings.

¶ 59    Defendant argues that the second amendment protects possession of firearms by "all Americans" without limitation. He does not acknowledge that *Bruen* limits the second amendment's protections to law-abiding citizens, even though *Bruen* repeats that limitation more than a dozen times. Similarly, defendant does not acknowledge that multiple Illinois courts have interpreted *Bruen* as placing such a limitation on the second amendment. Defendant's approach to the "plain text" step of the *Bruen* test disregards *Bruen*'s own interpretation of whom the second amendment protects: law-abiding citizens who possess firearms outside the home for purposes of self-defense.

¶ 60    Defendant devotes much of his briefs to arguing that Illinois's civil firearms regulation regime, rather than the AUUW statute, is unconstitutional. For example, defendant complains that obtaining a FOID card and a CCL "impose[ ] burdens" like completing a form, submitting a photograph with the application, and completing 16 hours of firearms training. Defendant also objects to Illinois requiring a parent or guardian's permission for an 18-to-20-year-old to obtain a

FOID card. According to defendant, the fact that a teenager needs parental consent to own a firearm is "an affront to *** deep constitutional tradition."[6] That contention is meritless.

¶ 61    In any event, *Bruen* does not hold or even suggest that Illinois's FOID Card or Firearm Concealed Carry Acts are unconstitutional. It suggests the opposite. *Bruen* held that New York's firearm regulation regime was unconstitutional because it allowed state officials to deny a license to carry a firearm in public based on an applicant's failure to demonstrate "cause" or "need." See *Bruen*, 597 U.S. at ___, ___, 142 S. Ct. at 2123-24, 2156. That is not how Illinois's firearm regulation regime operates. Rather, Illinois is what *Bruen* calls a "shall-issue" state because the Illinois State Police *shall* issue a FOID card and a CCL to any applicant who meets the respective statutory criteria. *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 16, 22. *Bruen* states that "nothing in our analysis should be interpreted to suggest the unconstitutionality of *** 'shall-issue' licensing regimes." *Bruen*, 597 U.S. at ___ n.9, 142 S. Ct. at 2138 n.9. This court has held that, under *Bruen*, Illinois's FOID Card Act and Firearm Concealed Carry Act are not facially unconstitutional. *Gunn*, 2023 IL App (1st) 221032, ¶¶ 19, 29. We see no reason to revisit that holding. Accordingly, we hold that subsections (a)(3)(A-5), (a)(3)(C), and (a)(3)(I) of the AUUW statute are not facially unconstitutional under *Bruen*.

¶ 62                                    D. One-Act, One-Crime

---

[6]The Office of the State Appellate Defender's (OSAD) apparent position that 18-to-20-year-olds are adults who are fully entitled to unrestricted ownership of firearms is difficult to square with OSAD's position that, for purposes of sentencing, defendants as old as 22 or 23 are effectively juveniles because their brains have not finished developing. See, *e.g.*, *People v. Buford*, 2023 IL App (1st) 201176, ¶ 45.

¶ 63    Finally, defendant argues that, if we affirm his convictions, we should vacate all but one of them pursuant to the one-act, one-crime rule because each of the four counts of AUUW involved the same act of possessing one firearm. The State agrees.

¶ 64    Defendant did not preserve this issue because he did not raise it in his posttrial motion. See *People v. Hagler*, 402 Ill. App. 3d 149, 152 (2010). However, he requests review under the second prong of the plain error rule. One-act, one-crime violations fall under the second prong of the plain error rule. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 15.

¶ 65    The one-act, one-crime rule prohibits multiple convictions based on the same physical act. *People v. Akins*, 2014 IL App (1st) 093418-B, ¶ 17. An "act" is " 'any overt or outward manifestation which will support a different offense.' " (Internal quotation marks omitted.) *People v. Quinones*, 362 Ill. App. 3d 385, 397 (2005) (quoting *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996)). Illinois courts have generally held that possession of one firearm is a single physical act that can only support one conviction. See, *e.g.*, *id.*; *West*, 2017 IL App (1st) 143632, ¶ 25 (finding a one-act, one-crime violation where the defendant's AUUW and armed habitual criminal convictions were based on the possession of one firearm). We follow that authority and conclude that defendant can only be convicted of one count of AUUW due to his possession of one firearm.

¶ 66    However, that does not undermine our conclusion that, for purposes of constitutionality under the *Bruen* test, the "conduct" that the AUUW statute prohibits is possessing a firearm under subsection (a)(1) *plus* one of the factors in subsection (a)(3). Defendant's constitutional argument and his one-act, one-crime argument involve different "halves" of the AUUW statute. The constitutional argument addresses the nonphysical factors in subsection (a)(3) that make physical possession of a firearm a crime. By contrast, the one-act, one-crime argument addresses physical

possession of a firearm under subsection (a)(1). In other words, the one-act, one-crime analysis asks how many firearms defendant possessed and how many convictions can be entered. The constitutional analysis asks whether a state can criminalize the possession of a firearm based on age and noncompliance with civil firearms regulations.

¶ 67    When multiple convictions violate the one-act, one-crime rule, we must vacate the less serious convictions. *Artis*, 232 Ill. 2d at 170. To determine which offense is less serious, we first examine the potential punishment for each offense. *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009). All four counts of AUUW in this case are Class 4 felonies that carry the same punishment. 720 ILCS 5/24-1.6(d) (West 2018). We must next examine which offense has the more culpable mental state. *Samantha V.*, 234 Ill. 2d at 379. All four counts have the same mental state, which is "knowingly." 720 ILCS 5/24-1.6(a) (West 2018). We cannot determine which of the counts is the most serious, so we remand to the trial court for that determination. *People v. Jackson*, 2016 IL App (1st) 133823, ¶ 68.

¶ 68                                        III. CONCLUSION

¶ 69    For the foregoing reasons, we affirm the denial of defendant's motion to quash arrest and suppress evidence, the trial court's acceptance of his jury waiver, and the constitutionality of his convictions for AUUW. However, we find that defendant's four AUUW convictions for one act of possessing a firearm violate the one-act, one-crime rule, and we remand to the trial court to determine which counts should be vacated and which one should stand.

¶ 70    For the foregoing reasons, we affirm and remand.

¶ 71    Affirmed and remanded.

---

***People v. Hatcher*, 2024 IL App (1st) 220455**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-11210; the Hon. John T. Gallagher, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Matthew M. Daniels, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Jessica R. Ball, and James J. Stumpf, Assistant State's Attorneys, of counsel), for the People. |