2024 IL App (1st) 231500-U
No. 1-23-1500
Order filed August 22, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 2618 |
| | ) | |
| TEVIN NELSON, | ) | Honorable |
| | ) | John F. Lyke Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the denial of defendant's petition for relief from judgment where he has not established that the subsection of the aggravated unlawful use of a weapon statute under which he was convicted is facially unconstitutional.

¶ 2    Defendant Tevin Nelson appeals from the circuit court's order denying his petition for relief from judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)). He argues that his conviction for aggravated unlawful use of a weapon (AUUW) should be vacated because the subsection of the statute under which he was convicted (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2020)) is facially unconstitutional under

the second amendment to the United States Constitution (U.S. Const., amend. II). For the following reasons, we affirm.

¶ 3    On August 22, 2022, defendant entered a negotiated guilty plea to one count of AUUW in exchange for six years' imprisonment and the *nolle prosequi* of other charges. He did not move to withdraw his plea or file a direct appeal.

¶ 4    On February 8, 2023, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code. He argued that the subsection of the AUUW statute under which he was convicted was unconstitutional and his conviction should be vacated pursuant to *People v. Aguilar*, 2013 IL 112116, and its progeny. On May 8, 2023, the court denied defendant's petition, noting that the subsection of the AUUW statute under which he was convicted had not been found unconstitutional.

¶ 5    On June 24, 2023, defendant mailed to this court a motion for leave to file a late notice of appeal, which we allowed.

¶ 6    On appeal, defendant argues that, pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the subsection of the AUUW statute under which he was convicted (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2020)) violates the second amendment.

¶ 7    Section 2-1401 of the Code provides a statutory procedure by which final judgments may be vacated more than 30 days after entry. 735 ILCS 5/2-1401(a) (West 2022); *People v. Stoecker*, 2020 IL 124807, ¶ 18. We review *de novo* a denial of a section 2-1401 petition on legal grounds. *People v. Abdullah*, 2019 IL 123492, ¶ 13. We also review *de novo* the constitutionality of a statute,

a question of law. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9 (citing *People v. Davis*, 2014 IL 115595, ¶ 26).

¶ 8    Section 24-1.6(a)(1), (a)(3)(A-5) of the Criminal Code of 2012 provides:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; [and]

***

(3) One of the following factors is present:

***

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2020).

¶ 9    Defendant claims that section 24-1.6(a)(1), (a)(3)(A-5) violates the second amendment on its face. Facial challenges are "the most difficult challenge to mount." *Davis*, 2014 IL 115595, ¶ 25. Statutes are presumed constitutional, and to rebut that presumption and show a statute is facially unconstitutional, a party must establish that there are no circumstances under which the

statute would be valid. *People v. Bochenek*, 2021 IL 125889, ¶ 10. "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Id.* A defendant may challenge the constitutionality of a statute at any time. *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 8.

¶ 10 The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, in which it stated that the second amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In 2010, the Court issued its decision in *McDonald v. City of Chicago*, in which it extended the right to keep and bear arms to the states under the fourteenth amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Following *Heller* and *McDonald*, courts developed a two-step test for evaluating second amendment challenges to firearm regulations: the court would consider whether the regulated activity fell outside the scope of the second amendment as the amendment was originally understood and, if not, weigh the severity of the regulation against the ends the government sought to achieve in enacting it. See *Smith*, 2024 IL App (1st) 221455, ¶ 11.

¶ 11 Then, in 2022, the Court issued *Bruen*, in which it announced a new test for evaluating the constitutionality of firearm regulations:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of

firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." (Internal quotation marks omitted.) *Bruen*, 597 U.S. at 24.

¶ 12    In other words, the first question under *Bruen* is "Does the plain text of the second amendment cover an individual's conduct?" (Internal quotation marks omitted.) *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 52. If the answer is no, the regulation is constitutional. *Id.* If the answer is yes, the conduct is presumptively protected, and the court must answer the second question: "Is the State's regulation consistent with the Nation's historical tradition of firearm regulation[?]" (Internal quotation marks omitted.) *Id.*

¶ 13    Defendant argues that section 24-1.6(a)(1), (a)(3)(A-5) governs the conduct of publicly carrying a firearm, which is covered by the second amendment. He notes that a valid concealed carry license (CCL) under the Firearm Concealed Carry Act (Carry Act) (430 ILCS 66/1 *et seq.* (West 2020)) cannot be obtained unless a person, *inter alia*, is 21 years old, completes firearms training, and has a valid Firearm Owner's Identification (FOID) card under the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/1 *et seq.* (West 2020)). See 430 ILCS 66/25 (West Supp. 2021).

¶ 14    In turn, a person cannot obtain a FOID card if, *inter alia*, he or she has been convicted of a felony, is addicted to narcotics, has been a patient in a mental health facility in the prior five years, or has an intellectual disability. 430 ILCS 65/4(a)(2)(ii)-(v) (West Supp. 2021). Obtaining each license requires payment of certain fees. 430 ILCS 65/5(a) (West Supp. 2021); 430 ILCS 66/10(a)(3) (West Supp. 2021). The government is allowed 30 days to approve or deny an application for a FOID card, and 90 days for a CCL, which is only valid for 5 years. 430 ILCS

65/5(a) (West Supp. 2021); 430 ILCS 66/10(c), (e) (West Supp. 2021). According to defendant, this scheme places "an onerous burden" on the right to carry a firearm and the State cannot prove that a criminal penalty for failing to comply with the scheme has historical analogues.

¶ 15 The State initially responds that defendant lacks standing to challenge the Carry Act or the FOID Card Act as there is no evidence that he applied for a FOID card or CCL. However, as the State concedes, defendant was convicted under section 24-1.6(a)(1), (a)(3)(A-5) and he therefore has standing to challenge that provision, which criminalizes noncompliance with the Carry Act. See *People v. Carter*, 2022 IL App (1st) 210261, ¶¶ 67-69 (defendant had standing to raise facial challenge to statute under which he had been convicted as he was injured by the statute's enforcement); see also *People v. Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 17 (defendant who had been convicted of AUUW for failure to comply with FOID Card Act and Carry Act had standing to challenge AUUW statute despite no evidence of attempt to procure FOID Card or CCL).[1]

¶ 16 Substantively, the State points out that the FOID Card Act and Carry Act are "shall issue" licensing regimes. In other words, when an applicant meets the statutory criteria under those acts, they "*shall*" be issued a license. (Emphasis in original.) *Gunn*, 2023 IL App (1st) 221032, ¶¶ 16, 22; see also 430 ILCS 65/5(a) (West Supp. 2021) ("every applicant found qualified" under the FOID Card Act "shall be entitled to" a FOID card); 430 ILCS 66/10(a) (West Supp. 2021) (Illinois State Police "shall issue" a CCL to applicants who satisfy statutory requirements).

---

[1] Unpublished orders filed under Illinois Supreme Court Rule 23(b) after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(b), (e)(1) (eff. Feb. 1, 2023).

¶ 17      In *Bruen*, the Supreme Court differentiated between such "shall issue" licensing regimes and the "may issue" licensing regime that was then before the Court, in which a license to carry firearms in public would only issue to those who showed that "proper cause" existed. (Internal quotation marks omitted.) *Bruen*, 597 U.S. at 11-15, 38 n.9. The Court in *Bruen* recognized that Illinois was a shall-issue jurisdiction, and stated that nothing in its decision "should be interpreted to suggest the unconstitutionality" of any shall-issue licensing regime, as objective requirements like undergoing a background check or passing a firearm safety course did not prevent law-abiding, responsible citizens from exercising their second amendment right. *Id.* at 13 n.1, 38 n.9.

¶ 18      According to the State, we therefore do not need to undergo the *Bruen* analysis to reject defendant's claim. Indeed, following *Bruen*, in *Gunn*, a defendant who had been convicted of AUUW for possessing a weapon without a CCL or FOID card argued that his conviction was void as the Carry Act and FOID Card Act were unconstitutional under *Bruen*. *Gunn*, 2023 IL App (1st) 221032, ¶ 7. We disagreed, on the basis that the acts were shall-issue regimes condoned by *Bruen* as the background check and training requirements did not prevent law-abiding, responsible citizens from exercising their second amendment right. *Id.* ¶¶ 19, 29, 32 (citing *Bruen*, 597 U.S. at 38 n.9). See also *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 32, 37-41 (rejecting challenge to section 24-1.6(a)(1), (a)(3)(A-5) on same basis); *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶¶ 24-27 (same).

¶ 19      Defendant argues that *Bruen*'s endorsement of shall-issue licensing schemes comes only from footnotes, is *dicta*, and references only the civil framework for obtaining a CCL and not the criminalization of possessing a firearm in public without one. However, even disregarding *Bruen*'s

discussion of licensing schemes, defendant's claim that section 24-1.6(a)(1), (a)(3)(A-5) is unconstitutional under the test set forth in *Bruen* still fails.

¶ 20    We recently resolved this question in *Hatcher* where, as here, the defendant argued that section 24-1.6(a)(1), (a)(3)(A-5) was unconstitutional under *Bruen*. *Hatcher*, 2024 IL App (1st) 220455, ¶ 51. We noted that *Bruen* limited the scope of the second amendment to law-abiding citizens. *Id.* ¶ 55 (citing *Bruen*, 597 U.S. at 71); see also *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that justices in *Bruen* majority repeated phrase "law-abiding" 18 times between their majority opinion and concurrences). As the Carry Act prohibited possession of a concealed firearm outside the home without a CCL, anyone who did so was violating civil law. *Hatcher*, 2024 IL App (1st) 220455, ¶ 57. Section 24-1.6(a)(1), (a)(3)(A-5) merely criminalized what was already non-law-abiding conduct. *Id. Bruen* and the second amendment therefore did not apply to the conduct at issue and the defendant's argument failed at *Bruen*'s first step. *Id.*

¶ 21    Defendant argues we should undertake a historical analysis under *Bruen*'s second step, unlike the courts in *Gunn* and *Hatcher*. Even were we to do so, defendant's argument would nevertheless fail.

¶ 22    Another district of this court has already found that the concealed carry provision of section 24-1.6(a) is constitutional under the second step of the *Bruen* test. *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶¶ 14, 21-34. In *Sinnissippi Rod & Gun Club*, the court found that the State provided historical examples regulating the manner in which persons could carry firearms in public that were relevantly similar to Illinois's concealed-carry statutory scheme. *Id.* ¶¶ 27-34. For example, courts had explained " '[f]rom Blackstone through the 19th-century cases' " that the right to keep and bear arms was not a right to carry any weapon in any manner.

*Id.* ¶ 28 (quoting *Heller*, 554 U.S. at 626). Rather, 19th-century prohibitions on carrying concealed weapons were found lawful under the second amendment or " 'state analogues.' " *Id.* ¶ 29 (quoting *Bruen*, 597 U.S. at 52). The public carry of firearms was commonly regulated in the colonies and early Republic to prevent fear and terror, and in the 1800s "to reduce violence and protect the public." *Id.* ¶ 32. As section 24-1.6(a) likewise regulated the manner in which a person could publicly carry a firearm and was not a total ban on the public carrying of firearms, it was therefore constitutional under *Bruen*, *Id.* ¶¶ 33-34.

¶ 23   In sum, our courts have consistently rejected the argument that section 24-1.6(a)(1), (a)(3)(A-5) is facially unconstitutional under *Bruen*. See *Hatcher*, 2024 IL App (1st) 220455; *Gunn*, 2023 IL App (1st) 221032; *Sinnissippi Rod & Gun Club*, 2024 IL App (3d) 210073. Defendant provides no persuasive reason to depart from the reasoning in these cases.

¶ 24   Moreover, even if we found some fault with the analysis contained in these prior decisions, we would be compelled to reject defendant's facial challenge to section 24-1.6(a)(1), (a)(3)(A-5) due to the recent decision in *United States v. Rahimi*, 602 U.S. __, 144 S. Ct. 1889, 1898 (2024). In that case, the Court rejected a facial challenge to a federal statute—18 U.S.C. § 922(g)(8)(C)(i) (2020)—that prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that the person represents a credible threat to the physical safety of an intimate partner, or a child of the partner or individual. *Id*. at 1898. The Court conducted the very analysis called for in its prior *Bruen* decision and stated that "we have no trouble concluding that Section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. 602 U.S. __, 144 S. Ct. at 1901.

¶ 25    Obviously, the specific federal statute at issue in *Rahimi* is not directly at issue in this appeal. However, here defendant has raised a facial challenge to section 24-1.6(a)(1), (a)(3)(A-5), and as such he must show that the statute is unconstitutional under *any set of facts* and the specific facts related to defendant are irrelevant. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). And, as discussed above, section 24-1.6(a)(1), (a)(3)(A-5) makes it a felony to possess a firearm without having been issued a currently valid CCL. 720 ILCS 5/1.6(a)(1), (a)(3)(A-5) (West Supp. 2021). Furthermore, a valid CCL cannot be obtained unless a person, *inter alia*, has a valid FOID card (430 ILCS 65/1 *et seq*. (West 2020)). See 430 ILCS 66/25 (West Supp. 2021). In turn, a person cannot obtain a FOID card if, *inter alia*, he or she "is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute *or by federal law*." (Emphasis added.) 430 ILCS 65/8(n) (West 2020). A person subject to Section 922(g)(8) of the federal code is just such a person.

¶ 26    Thus, because there is at least one instance where it would be constitutional under the second amendment and the *Bruen* analysis to deny a FOID card and therefore also deny a CCL to an applicant, and because possessing a firearm without a CCL in that instance would violate section 24-1.6(a)(1), (a)(3)(A-5), we must reject defendant's facial challenge to that statute. *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002) ("so long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.").

¶ 27    For these reasons, we affirm the circuit court's denial of defendant's petition for relief filed under section 2-1401 of the Code.

¶ 28    Affirmed.