2024 IL App (1st) 230524-U
Order filed: August 15, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0524

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 9485 |
| | ) | |
| TERRY MOFREH, | ) | Honorable |
| | ) | Arthur Wesley Willis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated unlawful use of a weapon is affirmed, where defendant was not prejudiced by any evidence admitted at trial or any improper closing argument, and the statute under which he was convicted was not facially unconstitutional.

¶ 2    Defendant-appellant, Terry Mofreh, appeals from his conviction for aggravated unlawful use of a weapon. For the following reasons, we affirm.

¶ 3    In July 2021, defendant was charged by indictment with two counts—counts 1 and 2—of aggravated unlawful use of a weapon ("AUUW") and one count—count 3—of unlawful use or possession of a weapon by a felon ("UUWF"), with the offenses alleged to have occurred on or about June 5, 2021. Count 1 alleged that defendant was in possession of a weapon while not having

been issued a valid concealed carry license, while count 2 alleged that defendant was in possession of a weapon while not having been issued a valid firearm owner's identification ("FOID") card. All three of the counts alleged that defendant had been previously convicted of aggravated battery.

¶ 4    Prior to trial, defendant filed a motion *in limine*. As relevant to this appeal, the motion first sought to "bar any witness from testifying regarding [ShotSpotter] or [ShotSpotter] technology." At a hearing on that motion, defense counsel asserted that with respect to the introduction of any ShotSpotter evidence, "I would ask that the officers be prohibited from any testimony regarding ShotSpotter or the fact that ShotSpotter went off that evening and that was the reason that they went to that location. It would be unfairly prejudicial if the jury were to hear that because they may wrongly assume that Mr. Mofreh had fired a weapon or used a weapon. There is no allegation of that contained in either the charging documents here or anything that we've been tendered in discovery."

¶ 5    The State responded: "We weren't going to argue that the defendant was the one that fired the gun, the defendant was the one that didn't fire the gun, somebody else fired the gun, anything about it but just that they were responding to a ShotSpotter call." The State further noted that "before the officers got there, they traveled six blocks, wrong way, on a one-way street and that's why they were doing that, to get to that address for that more serious call. So it kind of explains the officers' actions, the course of conduct they took." The trial court denied this motion *in limine*, concluding that such evidence was being introduced to show the police officers' course of conduct and was "not coming in for the truth of the matter asserted."

¶ 6    Defendant's motion *in limine* also sought to "prohibit the State from arguing that investigatory actions that could have been taken by police officers or other state actors would have

been a waste of taxpayer or state dollars as a justification for why certain investigatory actions were not taken in the present case." The trial court granted this motion without further argument.

¶ 7 The matter proceeded to a jury trial. Notably, during opening statements the State only briefly mentioned that before encountering defendant on June 25, 2021, a "team of Chicago police officers were responding to a call of ShotSpotter." While defense counsel's opening statement did not discuss any potential ShotSpotter evidence at all, it did specifically discuss the fact that after the police recovered a firearm, "one of the officers who was there that evening, one Officer Ainalakis picked up that firearm in direct violation of Chicago Police Department procedures because when he picked that gun up, he didn't first put on a pair of gloves to preserve potentially critical fingerprint evidence." Defense counsel also stressed that:

> "The gun, the magazine and the bullets were all sent off to the forensic services division within the Chicago Police Department. We're going to hear that this is the unit where objects can be scientifically analyzed for fingerprints that aren't immediately obvious to the naked eye. This is the unit where biological DNA swabs can be taken and sent off to the Illinois State Police. But for whatever reason once these objects made their way to the forensic services division, neither the firearm nor the magazine nor the bullets inside were ever subjected to any testing that we will hear about during this trial."

¶ 8 At trial, the State first presented testimony from Officer Evagelos Ainalakis. He testified that on the night of June 25, 2021, he was part of a tactical team that included Officers Ryan Ritchie and Anathea Smith. Just before 10 p.m., the team was directed to 10429 South Forest Avenue in Chicago, Illinois, due to a ShotSpotter alert which notifies police when shots are being fired. The team travelled in an unmarked vehicle northbound, down the wrong way of a one-way street to reach the location of the alert as quickly as possible. Upon arrival, Officer Ainalakis observed

defendant running towards the team through the front yards from 10437 to 10441 South Forest Avenue. The night was clear, and the street was lit with artificial lighting. Defendant, who was the only person out on the streets, looked in the officer's direction and ran toward a fence at 10441 South Forest Avenue holding a pink and black gun in his right hand, which was an unusual color for a firearm. Defendant then threw the firearm over the fence.

¶ 9 Officer Ainalakis exited the vehicle to detain defendant. While defendant initially paused in one of the front yards, he soon quickly and briefly ran away into the street. Defendant was then detained and placed in custody. Officer Ainalakis then walked to the fence, opened it and retrieved a pink and black firearm lying on the ground. The firearm was loaded with ammunition. At the time he recovered the firearm, Officer Ainalakis could hear that other people were beginning to congregate at the scene.

¶ 10 Defendant was then placed under arrest. A video of Officer Ainalakis' body camera footage, without audio, was published to the jury, While the video did not show defendant holding or throwing the firearm because the officer was still in the vehicle at the time, the video otherwise matched the officer's testimony. In addition, while neither Officer Ritchie nor Smith observed defendant in possession of or throwing a firearm, their testimony also otherwise generally corroborated that of Officer Ainalakis, as did a video of Officer Ritchie's body camera footage shown to the jury.

¶ 11 Of note, Officer Ainalakis identified the pink and black firearm in open court but also testified that he did not wear gloves when he retrieved the firearm because he did not have a pair of gloves immediately at hand. While on cross-examination he acknowledged that the use of gloves was called for by official police department policy, on redirect examination he explained that there was an exception to that requirement where "exigent circumstances" existed. Officer Ainalakis

testified that the presence of additional people near an unrecovered firearm constituted an exigent circumstance, and Officer Ritchie corroborated this testimony. Officer Ainalakis further testified that the ShotSpotter alert of shots fired also constituted an exigent circumstance. And, when confronted by defense counsel with the fact that the recovered firearm was not ultimately subjected to any forensic testing, including fingerprint or DNA testing, both Officers Ainalakis and Ritchie testified that neither fingerprint nor DNA testing would have typically been performed in this case, as it was a firearm possession case that did not involve a shooting or other violent crime.

¶ 12    Additionally, during their testimony each of the officers was asked about the ShotSpotter alert. Each generally testified that such an alert was an automated system that indicated a report that gunshots had been fired in a particular area. In addition, however, some of the language in the State's questioning and in the officers' testimony went further, indicating either implicitly or explicitly that a ShotSpotter alert indicated that gunshots had in fact been fired in a particular location. At trial, defense counsel objected to some, but not all, of this testimony.

¶ 13    The parties then stipulated that defendant did not have a valid concealed carry license or FOID card at the time of his arrest, and had a prior felony conviction.

¶ 14    During its closing argument, the State only briefly mentioned the ShotSpotter evidence and did not discuss the evidence of exigent circumstances at all. It was defense counsel that raised the issue of the failure to use gloves to retrieve the firearm and the lack of any exigent circumstances to justify this failure, as well as the fact that no forensic testing was completed. In rebuttal argument, the State responded that Officer Ainalakis and his fellow officers were responding to a ShotSpotter alert, which helps officers to "make it on time so that people don't get killed," and which signals that a shooting has occurred, which by its nature is an "exigent circumstance." The State also argued: "They would have you believe that every piece of evidence, every gun, every

piece of evidence that's recovered from the streets of Chicago is somehow—must have DNA on it, it must have fingerprints on it. Imagine the manpower it would take." Defense made an objection, and the trial court immediately sustained it. Thereafter, the jury was instructed—*inter alia*—that closing arguments were not evidence.

¶ 15    At the conclusion of trial, the State moved to dismiss count 1 by *nolle prosequi* and the jury proceeded to deliberate solely on the remaining counts 2 and 3. The jury found defendant guilty of both remaining counts.

¶ 16    Defendant filed a motion for a new trial, which was subsequently amended. As amended and as relevant to this appeal, in the motion defendant contended that: (1) even though his objection to the State's closing argument regarding the "Imagine the manpower" comment was sustained, "this was said in the presence of the jury and the jury still was able to hear this argument. This violation of the motion *in limine* served to taint the jury, prejudicing Mr. Mofreh," and (2) "ShotSpotter evidence was improperly admitted in this case" and improperly argued as substantive evidence during the State's closing argument. The State responded that, with respect to the first argument, the comment did not actually violate the motion *in limine,* it was made in response to defendant's own arguments regarding the lack of forensic testing and, in any case, defendant was not prejudiced where his objection was sustained. As to the ShotSpotter evidence and arguments related thereto, the State contended that such evidence and argument were only used at trial for course-of-conduct purposes. The trial court denied defendant's motion for a new trial.

¶ 17    Defendant was then sentenced to three years in prison for his conviction for AUUW on count 2, with his conviction on count 3 merging into that conviction. Defendant timely appealed.

¶ 18    We first consider defendant's assertion that his conviction should be reversed because he was prejudiced by the improper admission of irrelevant hearsay evidence regarding ShotSpotter.

¶ 19    Relevant evidence is "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *People v. Gonzalez*, 142 Ill. 2d 481, 487-88 (1991). Hearsay is defined as testimony of an out-of-court statement offered to establish the truth of the matter asserted therein. *People v. Evans*, 373 Ill. App. 3d 948, 964 (2007). A statement offered for a reason other than for the truth of the matter asserted is generally admissible because it is not hearsay. *Id*. For example, evidence offered to prove its effect on the listener's state of mind, or to show why the listener acted the way he did, is not hearsay. *Id*. Furthermore, evidence regarding a police investigation is relevant and admissible. *People v. Simms*, 143 Ill. 2d 154, 174 (1991) ("a police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact"). We apply an abuse-of-discretion standard when reviewing the trial court's decision regarding the admission of hearsay. *In re Jovan A.*, 2014 IL App (1st) 103835, ¶ 20.

¶ 20    Before continuing further, we note that the parties dispute whether and to what extent defendant fully preserved his objections to the admission of the ShotSpotter evidence. Defendant asserts in the alternative that this issue was either fully or partially preserved, or that the admission of this evidence should be reviewed for plain error or for ineffective assistance of counsel. Regardless of the lens through which we analyze this issue, we find no reason to disturb defendant's conviction based on the admission of the ShotSpotter evidence.

¶ 21    Specifically, even if fully preserved we note that to the extent that the officers generally testified that they responded to the scene due to a ShotSpotter alert, without further elaboration, this was proper course-of-conduct evidence explaining the course of the investigation. Even defendant concedes as much on appeal.

¶ 22    Furthermore, to the extent that that the officers testified that they responded to a ShotSpotter alert, which merely indicated a *report* of shots being fired, we also find that such evidence was entirely proper. Again, such evidence was not introduced for the truth of the matter asserted—that shots were actually fired—but to explain why the officers responded to the scene and why they drove the wrong way on a one-way street to get there. It was also properly admitted as rebuttal evidence, which is evidence "adduced by the prosecution to explain, repel, contradict, or disprove evidence presented by the accused." *People v. Rios*, 145 Ill. App. 3d 571, 584 (1986). At trial, defense counsel elicited evidence that the firearm was recovered without the use of gloves, in potential violation of official policy. Evidence that there was a *report* of shots being fired was properly admitted to establish that Officer Ainalakis *believed* that "exigent circumstances" existed which justified his failure to use gloves to retrieve the firearm, thus rebutting this evidence.

¶ 23    However, defendant is certainly correct that at times both the State's questioning at trial and the answers provided by the State's witnesses went beyond these limitations and may well have constituted improper hearsay evidence that the ShotSpotter alert indicated the truth of the matter asserted—that shots had actually been fired. However, to the extent that that this issue was fully preserved, any error may be considered harmless if it appears beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). In considering whether the error contributed to the verdict, we may consider whether the other evidence overwhelmingly supported the conviction. *Id.*; *People v. Littleton*, 2014 IL App (1st) 121950, ¶¶ 65-66 (error is harmless where other evidence in the case overwhelmingly supports the conviction).

¶ 24    At trial, Officer Ainalakis provided clear, unrebutted testimony that he observed defendant in possession of a distinctive pink and black firearm and then throw that firearm over a fence. No

other person was in the vicinity at that time. The positive testimony of a single credible witness is sufficient to sustain a conviction. *People v. Gray*, 2017 IL 120958, ¶ 36. This evidence was then corroborated by video evidence. While the body camera evidence did not show defendant in possession of the firearm, it does show Officer Ainalakis initially confront defendant after exiting the squad car and then go immediately to the *exact location* of the firearm behind the fence and retrieve it. In addition, both Officer Ainalakis' testimony and the video evidence established that when he was initially confronted by the police, defendant briefly attempted to flee. It is well established that flight, when considered with all the other evidence, is a circumstance that a factfinder may consider as tending to prove guilt. *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64. We also note that Officer Ainalakis' testimony regarding the events of the evening was also generally corroborated by the testimony of Officers Ritchie and Smith. Lastly, the parties stipulated that defendant did not have a valid FOID card at the time and had a prior felony conviction.

¶ 25     Furthermore, any possible prejudice in the introduction of the ShotSpotter evidence for the truth of the matter asserted did nothing to discount this evidence. At most, such evidence improperly supported the State's assertion that exigent circumstance existed to justify the failure to use gloves in retrieving the firearm. However, Officers Ainalakis and Ritchie both provided unrebutted, unchallenged testimony that the gathering crowd constituted a safety concern and as such was also an exigent circumstance. "In deciding whether an error is harmless, a reviewing court may 'determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence.' " *People v. Temple*, 2014 IL App (1st) 111653, ¶ 59, quoting *People v. Becker*, 239 Ill. 2d 215, 240 (2010). And in any case, Officers Ainalakis and Ritchie also both provided unrebutted, unchallenged testimony that neither fingerprint nor DNA

testing would have typically been performed in this case under any circumstances, as it was a firearm possession case that did not involve a shooting or other violent crime.

¶ 26    For all these reasons, we conclude that even if this issue was fully preserved any error in the admission of improper ShotSpotter evidence was harmless. *Patterson*, 217 Ill. 2d 428. Considering this finding, we also conclude that any error in the admission of this evidence also did not constitute plain error or ineffective assistance of counsel.

¶ 27    If reviewed for plain error, we note that the plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 182.

¶ 28    With respect to the first prong, if an error is "harmless, it most certainly cannot rise to the level of plain error." *People v. Leach*, 2012 IL 111534, ¶ 141. While defendant also asserts second-prong plain error on appeal, the "second prong of the plain error rule can be invoked 'only in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process.' " *People v. Jackson*, 2022 IL 127256, ¶ 28, quoting *People v. Herrett*, 137 Ill. 2d 195, 214 (1990). We find that defendant cannot establish second-prong plain error, because any admission of improper ShotSpotter evidence was merely an error in the trial process itself, and not an error affecting the

framework within which the trial proceeded. *People v. Moon*, 2022 IL 125959, ¶ 29; *People v. Johnson*, 2017 IL App (2d) 141241, ¶ 51 (second-prong plain error does not apply where error "resulted merely in the introduction of improper evidence").

¶ 29    To assert a claim of ineffective assistance of counsel, a defendant must establish that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A defendant must satisfy both prongs of the *Strickland* test, and the failure to satisfy either of these prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 30    In this case, we can dispose of defendant's assertion of ineffective assistance of counsel on the prejudice prong alone. We have already concluded that any introduction of ShotSpotter evidence was harmless, and therefore any failure by defense counsel to object to this evidence or otherwise preserve the matter for appeal cannot have prejudiced defendant. See *People v. Jackson*, 2020 IL 124112, ¶ 91; *People v. Kite*, 204 Ill. App. 3d 955, 960 (1990).

¶ 31    Next, defendant contends the State made various improper remarks during closing arguments. Prosecutors have great latitude in making their closing arguments, and such arguments are proper if they are based on the record or are reasonable inferences drawn therefrom. *People v. Moya*, 175 Ill. App. 3d 22, 24 (1988). The entire record, particularly the full argument of both sides, must be considered to assess the propriety of prosecutorial argument. *People v. Williams*, 313 Ill. App. 3d 849, 863 (2000). Prosecutorial comments constitute reversible error only if they engender "substantial prejudice." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). Substantial prejudice occurs when "the improper remarks constituted a material factor in a defendant's conviction." *Id.*

¶ 32    This court has acknowledged confusion regarding the applicable standard of review, in light of "an apparent conflict" in supreme court precedent. *People v. Green*, 2017 IL App (1st) 152513, ¶¶ 78-9. In 2000, our supreme court stated that the trial court's determination of the propriety of remarks during closing argument "will not be disturbed absent a clear abuse of discretion." *People v. Blue*, 189 Ill. 2d 99, 128 (2000). However, in 2007, our supreme court subsequently stated that "[w]hether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121.

¶ 33    We need not decide whether *Wheeler* or *Blue* defined the precise standard of review. This is because under either standard, we find that the remarks challenged in this appeal did not constitute reversible error. See *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 40 ("In this case, we would reach the same result under any standard of review.").

¶ 34    We first consider defendant's argument that he was prejudiced by the State's violation of the motion *in limine* in making the "Imagine the manpower" comment regarding the lack of forensic testing. Defendant preserved this issue for appeal by objecting at trial and including the issue in his posttrial motion.

¶ 35    However, even if this argument was made in error, it constituted only a brief and isolated comment in the context of the State's overall closing argument. See *People v. Jackson*, 2020 IL 124112, ¶ 87 (noting that the brief and isolated nature of remarks in context is a factor in assessing the effect on the jury verdict). Moreover, the trial court cured any error by immediately sustaining defense counsel's objection to this comment and instructing the jury that closing arguments were not evidence. *People v. Hampton*, 387 Ill. App. 3d 206, 225 (2008). On this record, and considering

the evidence presented at trial, we find that defendant cannot be said to have been substantially prejudiced as this remark did not constitute a material factor in his conviction.

¶ 36    Defendant also complains that he was prejudiced when the State improperly argued that the ShotSpotter evidence showed that shots had actually been fired. He specifically contends that these arguments served no purpose but to inflame the passions of the jury.

¶ 37    "Closing argument must serve a purpose beyond inflaming the emotions of the jury." *Wheeler*, 226 Ill. 2d at 128; see also *People v. Halteman*, 10 Ill. 2d 74, 84 (1956) ("[I]t is improper for the prosecutor to make statements the only effect of which is to inflame the passions or develop the prejudices of the jury without throwing any light upon the issues."). However, inflaming of the jury's passions is not directly barred; rather, any commentary that does so must also serve a different, proper purpose. *Blue*, 189 Ill. 2d at 128 ("[A]rgument that serves no purpose but to inflame the jury constitutes error.").

¶ 38    Here, the State's closing argument regarding the ShotSpotter evidence was not introduced solely to inflame the passions of the jury, but rather to respond to defense counsel's argument regarding the lack of any reason not to use gloves to retrieve the firearm. Statements are not improper if they were provoked or invited by defense counsel's argument. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 39    Moreover, even if there was some error with respect to the State's closing argument regarding the ShotSpotter evidence, defendant concedes that he did not preserve this issue for appeal and thus asks this court to review the issue for first-prong plain error. However, as discussed above, we find that the evidence of defendant's guilt was not closely balanced, but rather was overwhelming. Thus, review of this issue for first-prong plain error is unavailing.

¶ 40    Defendant's final contention with respect to the State's closing argument is that the State misstated the evidence when it argued that when Officer Ainalakis confronted defendant he "takes off running because he is guilty." We reject this argument because—however brief it may have been—both Officer Ainalakis' testimony and the video evidence established that defendant did in fact attempt to flee from police when he was confronted. "Arguments and statements that are based upon the facts in evidence, or upon reasonable inferences drawn there from, are within the scope of closing argument." *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 62. We also note that, again, defendant concedes that this issue was not properly preserved. For the same reasons as above, defendant's request for first-prong plain error is unavailing.

¶ 41    Finally, we address defendant's argument that the specific section of the AUUW statute under which he was convicted (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020)) is facially unconstitutional, as it violates his right to bear arms under the second amendment to the United States Constitution. U.S. Const., amend. II.

¶ 42    We review a constitutional challenge to a statute *de novo* because it presents a question of law. *People v. Masterson*, 2011 IL 110072, ¶ 23. Legislative enactments have a strong presumption of constitutionality, and this court must uphold the constitutionality of a statute when reasonably possible. *Id.* A defendant challenging the constitutionality of a statute bears the burden to prove the statutes' invalidity. *Id.*

¶ 43    Here, defendant raises a facial challenge to section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute, which is the most difficult type of constitutional challenge. An enactment is invalid on its face only if no set of circumstances exists under which it would be valid. *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20. A facial challenge requires a showing that the statute is unconstitutional under any set of facts; the specific facts related to the challenging party are

irrelevant. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *People v. Bochenek*, 2021 IL 125889, ¶ 10. A defendant may challenge the facial constitutionality of a statute at any time, even—as defendant does so here—for the first time on appeal. *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 8.

¶ 44    The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), in which it found that that the second amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." In 2010, the Court extended the right to keep and bear arms to the states under the fourteenth amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "Like most rights, [however,] the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. 570, 626 (2008). The issue here is whether section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute under which defendant was convicted improperly infringes on this right because it is facially unconstitutional. For the following reasons, we conclude that it does not.

¶ 45    In Illinois. the Firearm Owner's Identification Card Act requires that a person wishing to acquire or possess a firearm first obtain a FOID card from the Illinois State Police. 430 ILCS 65/2(a) (West 2020). In turn, the AUUW statute, in relevant part, provides that

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode,

legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; [and]

* * *

(3) One of the following factors is present:

* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card.

* * *

(d) Sentence

* * *

(3) Aggravated unlawful use of a weapon by a person who has been previously convicted of a felony in this State or another jurisdiction is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24-1.6(a), (d) (West 2020).

¶ 46    This specific section of the AUUW statute has previously been subject to facial constitutional challenges under the second amendment, and it has routinely been found constitutional. See *People v. Mosley*, 2015 IL 115872, ¶ 36; *People v. Wiggins*, 2016 IL App (1st) 153163, ¶¶ 75-81; *People v. Taylor*, 2013 IL App (1st) 110166, ¶¶ 28-32. However, in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court of the United States announced a new test for assessing the constitutional validity of laws seeking to regulate conduct protected by the second amendment.

¶ 47    Therein, the Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. To justify regulation of that protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. Thus, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)). As the Third District has explained,

> "[t]his text-and-history standard is a two-part inquiry. The first inquiry is: Does the plain text of the second amendment cover an individual's conduct? [Citation.] If not, the regulation is constitutional because it falls outside the scope of protection. But if it does, the individual's conduct is presumptively protected by the second amendment, and we move to the second inquiry: Is the State's regulation 'consistent with the Nation's historical tradition of firearm regulation[?]' [Citation.]" *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶ 13.

¶ 48    While on appeal, defendant contends that section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute fails this new test, we note that the same argument has been presented and rejected several times by Illinois courts. See *People v. Burns*, 2024 IL App (4th) 230428, ¶ 42; *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 61; *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 19. And, although defendant provides various arguments as to why we should not follow this clear precedent, we decline defendant's request to revisit these decisions.

¶ 49    Moreover, even if we accepted defendant's arguments and found some fault with the analysis contained in these prior decisions, we would be compelled to reject defendant's facial

challenge to section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute due to the recent decision in *United States v. Rahimi*, 602 U.S. __, 144 S. Ct. 1889, 1898 (2024). In that case, the Court rejected a facial challenge to a federal statute—18 U.S.C. § 922(g)(8)(C)(i) (2020)—that prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that the person represents a credible threat to the physical safety of an intimate partner, or a child of the partner or individual. *Id*. at 1898. The Court conducted the very analysis called for in its prior *Bruen* decision and stated that "we have no trouble concluding that Section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. 602 U.S. __, 144 S. Ct. at 1901.

¶ 50     Obviously, the specific federal statute at issue in *Rahimi* is not directly at issue in this appeal. However, here defendant has raised a facial challenge to section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute, and as such he must show that the statute is unconstitutional under *any set of facts* and the specific facts related to defendant are irrelevant. *Garvin*, 219 Ill. 2d 117. And, as discussed above, section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute makes it a felony to possess a firearm without having been issued a currently valid FOID card. 720 ILCS 5/24-1.6(a) (West 2020). Notably, Illinois law specifically provides that: "The Illinois State Police has authority to deny an application for or to revoke and seize a Firearm Owner's Identification Card previously issued under this Act only if the Illinois State Police finds that the applicant or the person to whom such card was issued is or was at the time of issuance *** [a] person who is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute *or by federal law*." (Emphasis added.) 430 ILCS 65/8(n) (West 2020). A person subject to Section 922(g)(8) of the federal code is just such a person.

¶ 51    Thus, because there is at least one instance where it would be constitutional under the second amendment and the *Bruen* analysis to deny a FOID card to an applicant, and because possessing a firearm without a FOID card in that instance would violate section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute, we must reject defendant's facial challenge to that statute. *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002) ("so long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.").

¶ 52    For the foregoing reasons, we affirm the judgement of the circuit court.

¶ 53    Affirmed.