2025 IL App (1st) 231728-U

Fourth Division
Filed February 27, 2025

No. 1-23-1728

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| Plaintiff-Appellee, | ) Circuit Court of Cook County |
| | ) |
| v. | ) No. 21 CR 06634 01 |
| | ) |
| MARTINAS NORVELL, | ) The Honorable Neera Lall Walsh, |
| Defendant-Appellant. | ) Judge, presiding. |
| | ) |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for aggravated unlawful use of a weapon was affirmed where the statute defining that offense was not facially unconstitutional under *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022).

¶ 2    Following a bench trial, defendant Martinas Norvell was convicted of aggravated unlawful use of a weapon (AUUW) and sentenced to three-and-a-half years in the Department of Corrections. On appeal, Norvell argues that the AUUW statute is unconstitutional on its face and asks us to reverse his conviction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Norvell was charged with one count of AUUW under section 24-1.6(a)(1) and (a)(3)(C) of the Criminal Code of 2012, which prohibits, in essence, carrying a firearm on or about one's person

when not on one's own land, home, or fixed place of business or an invitee on another's land or home without a valid firearm owner's identification (FOID) card. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020). He was also charged with one count of unlawful use of a weapon by a felon (UUWF).

¶ 5 The evidence at trial showed that, on March 26, 2021, Chicago police officers John Norwood and Julio Rodriguez were on patrol when they heard a call for shots fired and an active shooter. While responding, Officer Norwood was traveling southbound on Damen Avenue and observed a Dodge Charger with no headlights traveling at a high rate of speed eastbound on 79th Street prior to turning onto Damen going southbound. Officers stopped the car, and the driver informed Officer Norwood that Norvell, who was in the back seat of the car, had been shot in the leg. While Officer Norwood was attempting to have Norvell sit up, he observed a firearm underneath him. Officer Norwood recovered the firearm. After a LEADS check, Officer Norwood determined that Norvell did not have a valid FOID card or concealed-carry license. The car was registered to Norvell, and he had been previously convicted of aggravated fleeing and eluding, a felony.

¶ 6 The trial court found Norvell guilty of both counts. At sentencing, it merged the UUWF count into Norvell's conviction for AUUW, and it sentenced him to three-and-a-half years in the Department of Corrections and one year of mandatory supervised release. Norvell appealed.

¶ 7                               II.  ANALYSIS

¶ 8 On appeal, Norvell argues that his AUUW conviction should be reversed because the subsections under which he was charged and convicted violate, on their face, the second amendment. See U.S. Const., amend. II.

¶ 9 All statutes carry a strong presumption of constitutionality. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 37. To rebut that presumption, the party challenging the statute must clearly prove that it violates the constitution. *Id*. A statute is facially unconstitutional only where it would be invalid under any set of circumstances. *People v. Gray*, 2017 IL 120958 ¶ 58. The constitutionality of a statute is a question of law subject to *de novo* review. *Id.* ¶ 57.

¶ 10      Norvell argues that subsections (a)(1) and (a)(3)(C) of the AUUW statute violate the second amendment on their face because the conduct they prohibit—possessing a firearm without first obtaining a FOID card—is inconsistent with the nation's historical tradition of firearm regulation. Relying on *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022), Norvell contends that our nation's history does not include a tradition of imposing criminal punishment on an individual for exercising the right to bear arms without obtaining a license.

¶ 11      The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court interpreted the second amendment as establishing an individual right to keep and bear arms for the purpose of self-defense. Two years later, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court held that the second amendment right to keep and bear arms is fully applicable to the states under the fourteenth amendment. See U.S. Const., amend. XIV. Thus, through the fourteenth amendment, the second amendment protects the right of ordinary, law-abiding citizens in Illinois to carry a handgun for self-defense inside and outside the home. *Bruen*, 597 U.S. 1, at 8-10 (2022). "Like most rights, [however,] the right secured by the Second amendment is not unlimited." *Heller*, 554 U.S. 570, 626 (2008).

¶ 12      In *Bruen*, the Court articulated a framework for evaluating whether a particular firearm regulation violates the second amendment. The first question is whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S. Ct. at 2126. If it does, then "the Constitution presumptively protects that conduct." *Id.* To overcome that presumption, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* If the regulation is not consistent with the historical tradition, then it violates the second amendment. *Id.* Applying that framework, the court analyzed New York's public-carry law, which created a "may-issue" licensing regime that required applicants to show "proper cause" to obtain a concealed-carry license. See *id.* at 2134-56. It concluded that, other than "a few late-in-time outliers," American state and federal laws had not broadly required

law-abiding, responsible citizens to demonstrate a special need for self-defense to be allowed to carry arms in public, which meant that the New York public-carry law violated the second amendment. *Id.* at 2156.

¶ 13     Here, Norvell was convicted of possessing a firearm in violation of subsections (a)(1) and (a)(3)(C) of the AUUW statute. That statute provides, in relevant part:

> "A person commits the offense of aggravated unlawful possession of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; ***
>>
>> *** and
>>
>> (3) One of the following factors is present:
>>
>>> * * *
>>
>> (C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a)(1), (a)(3)(C).

The issuance of a FOID card is governed by the Firearm Owner's Identification Card Act (FOID Card Act) (430 ILCS 65/0.01 *et seq.* (West 2020)). Significantly, the FOID Card Act creates a shall-issue licensing scheme. Unlike the New York regulation invalidated in *Bruen*, applicants for FOID cards do not need to make any showing of particular need. Rather, the FOID Card Act authorizes the state police to deny an application "only if" one or more specified grounds for denial exist. 430 ILCS 65/8 (West 2020). Otherwise, the statute provides that the applicant "shall be entitled to a [FOID] Card upon the payment of a $10 fee." *Id.* § 5(a).

¶ 14 In the wake of *Bruen*, Illinois courts of review have uniformly rejected second-amendment challenges to the validity of convictions based on subsections (a)(1) and (a)(3)(C) of the AUUW statute. The reasons vary. Some cases have relied on the fact that, in *Bruen*, the Court suggested that shall-issue licensing regimes are presumptively constitutional. *E.g. People v. Thompson*, 2024 IL App (1st) 221031, ¶ 23 (citing *Bruen*, 142 S. Ct. at 2138 n.9, and *id.* at 80 (Kavanaugh, J., concurring)) ("Illinois's FOID Card Act establishes an objective shall-issue licensing regime, which *Bruen* recognized was not unconstitutional."); *but see People v. Brooks*, 2021 IL App (1st) 200435, ¶ 79 (rejecting argument that *Bruen* approved the Illinois licensing scheme). Others have reasoned that, because the no-FOID-card variety of AUUW can be validly applied in some circumstances, it is not facially unconstitutional. *E.g.*, *People v. Doehring*, 2024 IL App (1st) 230384, ¶ 30 (citing *People v. Mofreh*, 2024 IL App (1st) 230524-U, ¶¶ 49-51). At least one decision has held that, because a person who violates subsections (a)(1) and (a)(3)(C) of the AUUW statute necessarily also violates the FOID Card Act's civil prohibition of firearm possession without a FOID card, that person's conduct falls outside the ambit of the second amendment's plain text. *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 57. Norvell argues that all of these cases were wrongly decided, but he does not draw our attention to even one post-*Bruen* case finding either subsections (a)(1) and (a)(3)(C) of the AUUW statute or the requirements for the issuance of a FOID card under the FOID Card Act facially invalid.

¶ 15 We find persuasive the analysis in *Mofreh*. There, we relied on the decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), which rejected a facial challenge to a federal statute that prohibits anyone under a domestic violence restraining order from possessing a firearm if the order includes a determination that the person poses a credible risk to the physical safety of an intimate partner or a child of the partner. *Id*. at 1898. Applying the *Bruen* framework, *Rahimi* found that the prohibition was in line with a historical tradition of disarming any individual who "poses a clear threat of physical violence to another." *Id.* at 1901. We then examined the FOID Card Act and observed that, among other things, it provides that people who are prohibited by federal law from possessing firearms may not be issued a FOID card. *Mofreh*, 2024 IL App (1st)

230524-U, ¶ 50. We reasoned that the defendant in *Rahimi* was one such person and that, based on the opinion itself, the *Rahimi* defendant could be validly barred from possessing a firearm. *Id.* Hence, "there is at least one instance where it would be constitutional under the second amendment and the *Bruen* analysis to deny a FOID card to an applicant," from which it followed that there was at least one instance in which subsections (a)(1) and (a)(3)(A) could be validly applied, which meant that the statute was not unconstitutional on its face. *Id.* ¶ 51. Therefore, like in *Mofreh*, we reject Norvell's facial challenge and find that his conviction for AUUW does not violate the second amendment.

¶ 16  Finally, Norvell challenges the constitutionality of the UUWF statute both on its face and as applied to him. As the State points out, the trial court merged its finding of guilt for that offense into Norvell's conviction for AUUW, which means that it did not impose a sentence for UUWF. "We cannot review a conviction on which no sentence was imposed, as there is no final judgment." *People v. Brennan*, 2023 IL App (2d) 220190, ¶ 36 (citing *People v. Caballero*, 102 Ill. 2d 23, 51 (1984)). Accordingly, we do not consider the constitutionality of the UUWF statute, either on its face or as applied to Norvell.

¶ 17       III. CONCLUSION

¶ 18  Because the version of AUUW defined by section 24-1.6(a)(1) and (a)(3)(C) is not facially unconstitutional, we affirm Norvell's conviction for that offense.

¶ 19  Affirmed.