**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230089-U

Order filed November 15, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-23-0089 |
| v. | ) | Circuit No. 05-CF-1978 |
| | ) | |
| ERIC K. NOBLE, | ) | Honorable |
| | ) | David M. Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justice Hettel concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:    The aggravated unlawful use of a weapon statute is not facially unconstitutional for requiring firearm owners to obtain a Firearm Owners' Identification (FOID) card, and the FOID Card Act is not unconstitutional for prohibiting felons from possessing firearms.

¶ 2     Defendant, Eric K. Noble, appeals from the denial of his petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West

2022)). On appeal, defendant argues his conviction for aggravated unlawful use of a weapon (AUUW) was void because the AUUW statute is facially unconstitutional. We affirm.

I. BACKGROUND

On February 17, 2006, defendant pled guilty to one count of AUUW (720 ILCS 5/24-1.6(a)(3)(C) (West 2004)) for possessing a firearm without a Firearm Owners' Identification (FOID) card in exchange for the dismissal of the remaining counts and a sentence of four years' imprisonment. Defendant did not directly appeal his conviction or sentence. On February 6, 2023, defendant filed a petition for relief from judgment under section 2-1401 of the Code. Defendant sought to vacate his conviction, alleging it was unconstitutional based on *People v. Aguilar*, 2013 IL 112116. The Will County circuit court denied defendant's petition, and this appeal followed.

II. ANALYSIS

On appeal, defendant argues his conviction was void because the AUUW statute is facially unconstitutional under the second amendment. Specifically, defendant challenges the statute's requirement that a defendant possess a FOID card. Defendant further contends his conviction resulted from the enforcement of two unconstitutional provisions of the FOID Card Act (430 ILCS 65/1 *et seq.* (West 2004)): the prohibition on firearm ownership by felons (*id.* § 4(a)(2)(ii)) and age-based restrictions on firearm possession (*id.* § 4(a)(2)(i)).

Defendant did not raise these arguments below. However, a challenge to the facial constitutionality of a statute may be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32. To the extent defendant seeks to raise an as-applied constitutional challenge for the first time on appeal, such a claim is forfeited. *Id.* ¶¶ 35-37. An as-applied challenge is "not one of

those recognized by this court as being exempt from the typical rules of forfeiture and procedural bars in section 2-1401 of the Code." *Id.* ¶ 39.

¶ 8 Constitutional challenges carry the heavy burden of rebutting the strong judicial presumption of a statute's constitutionality. *People v. Rizzo*, 2016 IL 118599, ¶ 23. Meeting that burden requires the party challenging a statute to "clearly establish its invalidity." *People v. Mosley*, 2015 IL 115872, ¶ 22. "Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity." *Rizzo*, 2016 IL 118599, ¶ 23. We review the constitutionality of a statute *de novo*. *Aguilar*, 2013 IL 112116, ¶ 15.

¶ 9 An as-applied constitutional challenge requires the petitioner to show the statute "violates the constitution as it applies to the facts and circumstances of the challenging party. [Citation.] In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36.

> "A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.] A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. [Citation.] The particular facts related to the challenging party are irrelevant. [Citation.] If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 10 The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In Illinois, the right to bear arms is

3

governed by both civil and criminal statutes. *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 50. The AUUW statute requires an individual to obtain a FOID card in order to possess a firearm. 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2004). The FOID Card Act describes the requirements for obtaining a FOID card and states that "[n]o person may acquire or possess any firearm *** without having in his or her possession a [FOID] Card previously issued in his or her name by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2004).

¶ 11 Defendant maintains that the requirement to obtain a FOID card prior to carrying a firearm violates the second amendment. Defendant also suggests that the provisions of the FOID Card Act, specifically those provisions requiring applicants to be (1) nonfelons and (2) at least 21 years old or obtain the consent of a parent or legal guardian, are unconstitutional. See *id.* § 4(a)(2)(i), (ii).

¶ 12 A. Requirement to Obtain a FOID Card

¶ 13 Defendant first argues that Illinois's regulatory scheme, which requires its citizens to obtain a FOID card prior to possessing a firearm, is unconstitutional. Defendant cites *New York State Rifle & Pistol Ass'n, Inc., v. Bruen*, 597 U.S. 1 (2022), for the proposition that "[t]he imposition of criminal punishment for possessing a firearm without a FOID card *** must be re-examined" because "there is no historical evidence for criminalizing the act of publicly carrying a gun without a license." Specifically, defendant points to the requirements of the FOID Card Act that applicants wait up to 30 days for the Illinois State Police to approve or deny the application, pay a $5 fee, and provide personal information, which the police can use to verify the applicant's criminal and mental health history.

4

¶ 14        The Supreme Court in *Bruen* analyzed a New York regulatory scheme, which required individuals to demonstrate "proper cause" when seeking a license to carry a firearm outside the home. *Id.* at 12-14. Those seeking to carry a firearm had to " 'demonstrate a special need for self-protection distinguishable from that of the general community.' " *Id.* at 12 (quoting *In re Klenosky*, 428 N.Y.S.2d 256, 257 (App. Div. 1980)). In its ruling, the Court emphasized the importance of historical analysis when deciding "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. It further clarified that " 'individual self-defense is "the *central component*" of the Second Amendment right.' " (Emphasis in original.) *Id.* at 29 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010), quoting *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008)).

¶ 15        After reviewing the relevant history, the Court concluded New York's requirement to demonstrate a special need for self-defense violated the second amendment. *Id.* at 70. In reaching its decision, the Court also drew a distinction between so-called "shall-issue" licensing regimes and the discretionary regulations enacted by New York, holding that "shall-issue" licensing regimes were not affected by its decision because "they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* at 38 n.9 (quoting *Heller*, 554 U.S. at 635).

¶ 16        Illinois is a "shall-issue" state. *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 16. The FOID Card Act requires the Illinois State Police to issue a FOID card to any applicant who meets the criteria set forth in the statute. *Id.*; 430 ILCS 65/5 (West 2004). Although the Court in *Bruen* described situations in which shall-issue licensing regimes could conceivably burden the second amendment, such as "lengthy wait times in processing licensing applications or exorbitant fees," the Court advised that "nothing in our analysis should be interpreted to suggest the

5

unconstitutionality" of shall-issue licensing regimes. *Bruen*, 597 U.S. at 38 n.9. Defendant has failed to describe how or why a 30-day processing window or a $5 application fee unduly burden the right to bear arms, and we find they do not. Further, the Supreme Court "explicitly acknowledged that background checks, which are the cornerstone of the FOID Card Act, are permissible." *Gunn*, 2023 IL App (1st) 221032, ¶ 19. Accordingly, we find the AUUW statute is not facially unconstitutional based on its requirement to obtain a FOID card prior to possessing a firearm.

¶ 17                                    B. Felon Status

¶ 18        Next, defendant argues there is no historical precedent for banning felons from possessing firearms. Despite this country's "longstanding prohibitions on the possession of firearms by felons and the mentally ill," (*Heller*, 554 U.S. at 626) defendant contends "*Bruen* represented a watershed change to Second Amendment analysis." As we recently observed, under *Bruen*'s framework

> "[t]he first inquiry is: Does the plain text of the second amendment cover an individual's conduct? [Citation.] If not, the regulation is constitutional because it falls outside the scope of protection. But if it does, the individual's conduct is presumptively protected by the second amendment, and we move to the second inquiry: Is the State's regulation 'consistent with the Nation's historical tradition of firearm regulation[?]' " *Sinnissippi Rod & Gun Club*, *Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶ 13 (quoting *Bruen*, 597 U.S. at 24).

¶ 19        After defendant filed his appeal, we issued our decision in *People v. Travis*, 2024 IL App (3d) 230113, *pet. for leave to appeal pending*, No. 130696 (filed May 16, 2024), in which we considered the constitutionality of banning felons from possessing firearms. The defendant in

6

*Travis* challenged the statutes criminalizing being an armed habitual criminal (720 ILCS 5/24-1.7(a)(2) (West 2020)) and unlawful use of a weapon by a felon (*id.* § 24-1.1(a)) because they "amount[ed] to a 'permanent, status-based revocation of the right to keep and bear arms.' " *Travis*, 2024 IL App (3d) 230113, ¶ 21.

¶ 20 Utilizing the framework articulated in *Bruen*, we first found the second amendment's plain text covered the challenged conduct, possessing a firearm. *Id.* ¶ 25. We then analyzed the history and tradition of disarming felons (*id.* ¶¶ 29-32) and concluded the challenged statutes "are consistent with this nation's history of preventing potentially dangerous individuals from exercising the right to bear arms, and their effects on law-abiding citizens' right to self-defense are minimal." *Id.* ¶ 33. We adopt the reasoning set forth in *Travis* here and conclude that the provisions of the FOID Card Act denying felons the ability to obtain a FOID card are constitutionally sound.[1]

¶ 21                                     C. Age-Based Restrictions

¶ 22 Defendant was convicted of AUUW for possessing a firearm without a FOID card, having been previously convicted of a felony. See 720 ILCS 5/24-1.6(a)(3)(C), (d) (West 2004). Our conclusion as to the constitutionality of requiring a FOID card prior to possessing a firearm (*supra* ¶ 16) and proscribing felons from obtaining FOID cards (*Travis*, 2024 IL App (3d) 230113, ¶ 33) renders it unnecessary to reach defendant's aged-based restriction argument. As it relates to facial constitutional challenges, "[t]he fact that a statute may operate invalidly under some circumstances is insufficient to establish facial invalidity ***." *Hill v. Cowan*, 202 Ill. 2d

---

[1]During the pendency of this appeal, the United States Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), upholding a federal statute that prohibited certain individuals subject to a domestic violence restraining order from possessing a firearm. After reviewing *Rahimi* and the parties' related supplemental briefs, we determine that decision does not change the above analysis.

151, 157 (2002). So long as there exists a situation in which the statute could be validly applied, a facial challenge must fail. *People v. Davis*, 2014 IL 115595, ¶ 25. We reach constitutional issues "only as a last resort," and we analyze such questions only insofar as they are strictly necessary to decide a case. *In re E.H.*, 224 Ill. 2d 172, 178-79 (2006). Accordingly, we neither reach nor express any opinion as to the legitimacy of defendant's age-based restriction argument.

¶ 23                                III. CONCLUSION

¶ 24        The judgment of the circuit court of Will County is affirmed.

¶ 25        Affirmed.

¶ 26        PRESIDING JUSTICE McDADE, dissenting:

¶ 27        I respectfully dissent from the majority's decision. Instead, I would find that Illinois firearm dispossession statutes are unconstitutional where they require a categorical ban on firearm ownership for all felons, regardless of whether the felony convictions were violent in nature.

¶ 28        Defendant in this case was convicted of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2004)) for possessing a firearm without a FOID card. In order for a person to obtain a FOID card, the FOID Card Act requires that, "He or she has not been convicted of a felony under the laws of this or any other jurisdiction." 430 ILCS 65/4(a)(2)(ii) (West 2004). Therefore, as defendant had been previously convicted of felony criminal trespass to a residence, he could not obtain a FOID card.

¶ 29        As written, Illinois law prohibits gun possession by felons, regardless of the predicate offense. However, there are many felony offenses that are nonviolent, including unlawful or syndicated gambling (720 ILCS 5/28-1(c), 28-1.1(f) (West 2022)), bribery (*id.* §§ 29-2, 29A-3(b)), money laundering (*id.* § 29B-1(c)), perjury (*id.* § 32-2(e)), bid-rigging (*id.* § 33E-3),

8

receiving or offering kickbacks (*id.* § 33E-7(c)), flag desecration (*id.* § 49-1(e)), and eavesdropping (*id.* § 14-4), among many others. To say that anyone convicted of any of these nonviolent offenses are too dangerous to possess a firearm is unreasonable. See *Britt v. State*, 681 S.E.2d 320, 323 (N.C. 2009) (finding it "unreasonable to assert that a nonviolent citizen *** is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety"). "[N]onviolent felons are no more prone to gun violence than law-abiding citizens, and should have the same right to use armed self-defense within the home." Conrad Kahn, *Challenging the Federal Prohibition on Gun Possession by Nonviolent Felons*, 55 S. Tex. L. Rev. 113, 131 (2013); see also C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 695-96 (2009) ("In 2004, domestic diva Martha Stewart was convicted of obstruction of justice, making false statements, and two counts of conspiracy in connection with dubious stock transactions. Although sentenced to only five months in jail plus a period of supervised release, she risked a much harsher punishment. Because she was convicted of a crime punishable by more than a year in prison, federal law bans her from having any gun. *** Is the public safer now that Martha Stewart is completely and permanently disarmed?").

¶ 30    Moreover, while there is historical precedence for disarming dangerous and violent individuals, there is no historical analogue for disarming nonviolent offenders.

> "Early twentieth-century practice reflected the traditions of previous centuries throughout American history: violent or otherwise dangerous persons were sometimes disarmed, but peaceable citizens—even if not necessarily law-abiding—were not. At Massachusetts's ratifying convention, Samuel Adams proposed an amendment guaranteeing that 'the said constitution be never construed…to prevent the people of the United States who are peaceable citizens,

9

from keeping their own arms.' American tradition reflects the right Adams envisioned." Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 274-75 (2020). Previous historical laws even specifically allowed nonviolent felons to retain their firearms. See *id.* at 284-85. "Therefore, firearm prohibitions on peaceable citizens contradict the original understanding of the Second Amendment and are thus unconstitutional." *Id.* at 286.

¶ 31    During the pendency of this appeal, the United States Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), that supports this conclusion. *Rahimi* stated that, "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at ___, 144 S. Ct. at 1896. The Court conducted a detailed historical analysis of firearm laws and came to the conclusion that, "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at ___, 144 S. Ct. at 1901. Therefore, "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at ___, 144 S. Ct. at 1902. In so deciding, the Court rejected the argument that Rahimi could be disarmed because he was not "responsible." *Id.* at ___, 144 S. Ct. at 1903. As expounded upon by the dissent,

> "[The Government] argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory. Indeed, the Court disposes of it in half a page—and for good reason. [Citation.] The Government's argument lacks any basis in our precedents and would eviscerate the Second Amendment altogether." *Id.* at ___, 144 S. Ct. at 1944 (Thomas, J., dissenting).

10

Thus, as pointed out by the Court, our nation's firearm regulations have focused not on whether a person was law abiding, but on whether they were dangerous and threatened harm to others. Those individuals who have been convicted of nonviolent felony offenses do not fit into this category.

¶ 32     Because Illinois law dictates a categorical, permanent ban on firearm possession for all felons, regardless of the person's dangerousness, I would find that it is unconstitutional as it is at odds with the traditional conception of the second amendment. Therefore, I would reverse the denial of defendant's section 2-1401 petition, vacate his AUUW conviction, and remand for the circuit court to reconsider its order denying his petition for a certificate of innocence.